## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS

**Margaret McKinney**                                                      **Plaintiff**

**v.**                          **CASE NO. 3:14CV00179 JTK**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                        **Defendant**

### ORDER AFFIRMING THE COMMISSIONER

Margaret McKinney seeks judicial review of the denial of her application for disability insurance benefits (DIB) and supplemental security income (SSI). McKinney applied for DIB and SSI in July 2011, with an alleged onset date of June 27, 2011.[1] McKinney last worked part-time in 2012 as an assistant director at a daycare.[2] She bases disability on congestive heart failure, diabetes and high blood pressure.[3]

**The Commissioner's decision.** The Commissioner's ALJ determined that McKinney has not engaged in substantial gainful activity since the alleged onset date.[4] McKinney has severe impairments - cardiomyopathy, diabetes, hypertension and obesity.[5] None of McKinney's severe impairments meet the Listings, and McKinney can perform a full range of sedentary work.[6] The ALJ held that McKinney can perform her past relevant work as an office clerk/account

---

[1]SSA record at pp. 117 & 126.

[2]*Id.* at pp. 35-36, 44 & 167.

[3]*Id.* at p. 166.

[4]*Id.* at p. 15.

[5]*Id.*

[6]*Id.* at pp. 16-17.

technician and office coordinator, as these positions do not require the performance of work-related activities precluded by the RFC.[7] McKinney's application was denied.[8]

After the Commissioner's Appeals Council denied a request for review, the ALJ's decision became a final decision for judicial review.[9] McKinney filed this case to challenge the decision. In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[10]

**McKinney's allegations.** McKinney maintains that the ALJ's denial of disability benefits should be reversed because (1) the ALJ erred in determining that McKinney's impairments do not meet the Listings; (2) the RFC is not supported by substantial evidence; (3) the ALJ did not fully and fairly develop the record; (4) the ALJ erred in failing to present a hypothetical to the VE; and (5) the ALJ erred in determining that McKinney can return to her past relevant work. These arguments are not persuasive. No error occurred, and the ALJ's decision to deny benefits is supported by substantial evidence.

---

[7]*Id.* at p. 22.

[8]*Id.* at p. 23.

[9]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

[10]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."[11] For substantial evidence to exist in this case, a reasonable mind must accept the evidence as adequate to support the determination that McKinney is not disabled.[12]

**The Listings.** It appears that McKinney maintains she meets one of the cardiovascular system listings. In her brief, however, McKinney does not present specific evidence to support her assertion that the criteria of one of the listings are satisfied. It is McKinney's burden to prove that her conditions meet or equal all of the specified medical criteria in a listing.[13] She has not met that burden. Her argument is not persuasive.

**RFC.** McKinney argues that the RFC is not supported by substantial evidence. As stated above, the ALJ determined that McKinney is capable of performing the full range of sedentary work.[14] The RFC is supported by substantial evidence.

Although McKinney has consistently been treated for cardiomyopathy,[15] the evidence establishes that it has improved with treatment. In 2010 McKinney reported ongoing chest pain,

---

[11]*Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (internal quotations and citations omitted).

[12]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[13]*See McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011).

[14]SSA record at p. 16.

[15]"Cardiomyopathy is a chronic disease of the heart muscle (myocardium), in which the muscle is abnormally enlarged, thickened, and/or stiffened. The weakened heart muscle loses the ability to pump blood effectively, resulting in irregular heartbeats (arrhyth-mias) and possibly even heart failure." Judith Sims, 2 *The Gale Encyclopedia of Med.* 856 (4th ed.).

shortness of breath and fatigue.[16] She underwent an echocardiogram, and it was determined that

she had an ejection fraction of 25%.[17, 18] McKinney was treated with multiple medications, and

three months later reported no chest pain, shortness of breath or fatigue.[19] She was "feeling much

better," and her ejection fraction had increased to 45%.[20] Nine months later, in April 2011, her

treating physician noted that she was "doing well in regard to cardiomyopathy."[21] In August

2011 another echocardiogram was performed.[22] Mild mitral regurgitation, mild tricuspid

regurgitation and a normal ejection fraction of 60-65% were observed.[23] McKinney reported

shortness of breath and some weakness and dizziness with quick movements, but no fatigue or

chest pain.[24] In January 2012, after reporting palpitations, McKinney wore a Holter monitor for

24 hours.[25, 26] No abnormalities, however, were identified and her palpitations resolved.[27] Nine

---

[16]SSA record at pp. 356 & 362.

[17]*Id.* at p. 365.

[18]"The volume of blood pumped out of the ventricle is called the ejection fraction (EF). In a healthy heart, the EF is greater than 50%, while in people with CHF [congestive heart failure], it is less than 50% and can be as low as 30%." Tish Davidson & Laura Jean Cataldo, 2 *The Gale Encyclopedia of Med.* 1143 (4th ed.).

[19]SSA record at p. 294.

[20]*Id.* at pp. 269 & 293.

[21]*Id.* at p. 264.

[22]*Id.* at p. 280.

[23]*Id.* at p. 281.

[24]*Id.* at pp. 277-278.

[25]*Id.* at p. 392.

[26]"Holter monitoring is continuous monitoring of the electrical activity of a patient's heart muscle (electrocardiography) for 24 hours, using a special portable device called a Holter

months later McKinney reported no chest pain or palpitations.[28] Her cardiovascular physical

exam was normal.[29] Impairments that are controlled with treatment are not disabling.[30]

McKinney's diabetes has also improved with treatment. In April 2011, after presenting to

the emergency room with a glucose level of 582 and a hemoglobin A1c of 11, it was determined

that McKinney has type II diabetes.[31, 32] She was treated with insulin and a prescription diabetes

medication.[33] In August 2012, improvement in her blood sugar and diabetes was noted.[34]

McKinney's glucose was 102 mg/dl - slightly higher than the normal range - and her hemoglobin

A1c was 5.6.[35] Two months later McKinney's glucose was 59 - lower than the normal range -

and hemoglobin A1c was 5.2.[36] In February 2013, McKinney's glucose was 70 mg/dl - within

---

monitor. Patients wear the Holter monitor while carrying out their usual daily activities." Robert
Scott Dinsmoor, 3 *The Gale Encyclopedia of Med.* 2137 (4th ed.).

[27]SSA record at pp. 342 & 382.

[28]*Id.* at p. 383.

[29]*Id.* at p. 384.

[30]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[31]SSA record at pp. 227 & 229.

[32]Hemoglobin A1c levels measure "how much sugar has been in a person's blood during
the past two to four months. It is used to monitor the effectiveness of diabetes treatment." Nancy
J. Nordenson & Teresa G. Odle, 3 *The Gale Encyclopedia of Med.* 1910 (4th ed.). Normal
hemoglobin A1c levels are between 4.0-6.0%. *Id.* at p. 1911.

[33]SSA record at pp. 263-264 & 287.

[34]*Id.* at p. 341.

[35]*Id.* at pp. 339-340.

[36]*Id.* at pp. 385-386.

the normal range - and her hemoglobin A1c was 5.3.[37] The ongoing treatment of McKinney's diabetes has been successful. Further, the records are void of any evidence of complications associated with McKinney's diabetes.

During the hearing, McKinney placed great emphasis on her fatigue and weakness.[38] She maintains that her fatigue and weakness are disabling and therefore prevent her from working. The records, however, do not support this allegation and the RFC adequately takes McKinney's fatigue and weakness into account. In the records McKinney occasionally complains of fatigue and weakness.[39] The strongest complaints of fatigue come in the appointment with her treating physician one month following the hearing.[40] There are, however, almost an equal number of treatment notes in which she states that she has no fatigue and/or weakness.[41] Further, there are large periods of time during which McKinney does not mention fatigue at all, and none of McKinney's physicians ever diagnose her with any impairments related to fatigue. The evidence does not establish that McKinney's fatigue and weakness are disabling.

McKinney has been diagnosed with high blood pressure and is obese.[42] She has consistently been treated with prescription medication for her high blood pressure. Although her

---

[37]*Id.* at pp. 373 & 376.

[38]To the extent that McKinney argues the ALJ did not take her fatigue into account when determining the RFC, this Court is not persuaded. The ALJ discussed McKinney's fatigue throughout the decision.

[39]SSA record at pp. 287, 289, 362 & 378.

[40]*Id.* at p. 378.

[41]*Id.* at pp. 278, 294 & 383.

[42]*Id.* at p. 364.

blood pressure fluctuates throughout the medical records, it was most recently recorded at 136/60.[43] There is no evidence of end organ damage or other complications associated with high blood pressure. Additionally, although McKinney is obese, there is nothing in the record suggesting her obesity is disabling. The RFC adequately takes McKinney's high blood pressure and obesity into account.

The opinions of the state physicians lend even more support for the RFC with respect to all of McKinney's impairments. In the Physical Residual Functional Capacity Assessment, a state physician determined that McKinney can occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand/walk six hours in an eight hour workday and sit six hours in an eight hour workday.[44] This assessment is less restrictive than the assigned RFC. A second state physician affirmed the conclusions in November 2011.[45]

McKinney's reported daily activities also support the assigned RFC. In the Function Report, McKinney states that she is able to do some housework, laundry, prepare meals and tend to her personal needs without aid.[46] She goes outside twice a day, can drive a car, goes out alone and shops in stores for groceries.[47] McKinney spends about four hours a day with others, and

---

[43]*Id.* at p. 378.

[44]*Id.* at p. 298.

[45]*Id.* at p. 317.

[46]*Id.* at pp. 186-188.

[47]*Id.* at p. 189.

attends church twice a week.[48] Additionally, for approximately a year after the alleged onset date, McKinney worked part-time at a daycare, performing administrative duties.[49]

A reasonable mind would accept the evidence as adequate to support the ALJ's RFC determination. The RFC determination is supported by substantial evidence.

**Record development.** McKinney asserts that the ALJ erred in failing to fully and fairly develop the record. This argument is not persuasive.

It is the responsibility of the ALJ to "fully and fairly develop the evidentiary record."[50] "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work."[51] "While an ALJ does have a duty to develop the record, this duty is not never-ending. . . . The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."[52]

Multiple medical records - reviewed above - were submitted by McKinney with her application. These records span almost three years, and include progress notes from McKinney's treating physicians and local hospital. Diagnostic testing reports - a CT, x-ray, echocardiograms, cardiac catheterization, and blood counts - are also presented. In addition to the medical records presented by McKinney, the record contains assessments and evaluations conducted by state

---

[48]*Id.* at p. 190.

[49]*Id.* at pp. 35-40 & 186.

[50]*Byes v. Astrue*, 687 F.3d 913, 915-916 (8th Cir. 2012).

[51]*Id.* at 916.

[52]*McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) (internal citations omitted).

physicians. Taken together, these documents present a complete picture of McKinney's health and her ability to complete work-like tasks. No further development was necessary.

**Hypothetical.** McKinney maintains that the ALJ erred because he did not present a complete hypothetical to the VE. This argument, however, is not persuasive because the ALJ was not required to solicit VE testimony in determining that McKinney can perform her past relevant work.[53]

**Past relevant work.** McKinney asserts that the ALJ erred in determining that McKinney can perform her past relevant work. The dispositive question is whether the determination is supported by substantial evidence. A review of the record reveals that it is.

Although not necessary, the ALJ questioned the VE with respect to McKinney's past relevant work as a legal assistant and assistant director at a daycare.[54] The VE identified these positions as office clerk/account technician and office coordinator, respectively.[55] Both were placed in the sedentary exertional category.[56] After determining, with the support of substantial evidence, that McKinney is capable of sedentary work, the ALJ held that McKinney can perform the past relevant work of officer clerk/account technician and office coordinator.[57] A reasonable mind would find this evidence adequate to support the determination that McKinney can perform past relevant work. It is supported by substantial evidence.

---

[53]*Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir. 2001) (testimony from a vocational expert is not required at step four).

[54]SSA record at pp. 51-52.

[55]*Id.* at p. 51.

[56]*Id.* at pp. 51-52.

[57]*Id.* at p. 22.

**Conclusion.** Substantial evidence supports the ALJ's decision. No legal error occurred.

For these reasons, the court DENIES McKinney's request for relief (docket entry # 1) and

AFFIRMS the Commissioner's decision.

It is so ordered this 13th day of May, 2015.

_____

UNITED STATES MAGISTRATE JUDGE